UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEAN GERARD ASSENZA,

    Plaintiff,

v.                                                             Case No: 8:17-cv-857-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

Plaintiff, Dean Gerard Assenza, seeks judicial review of the denial of his claim for supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

**A.    Procedural Background**

Plaintiff filed an application for supplemental security income on May 7, 2008. (Tr. 461.) A hearing was held before an ALJ on July 19, 2010, and the ALJ subsequently issued an unfavorable decision. (Tr. 197–231, 235–50.) The Appeals Council remanded the case for further proceedings. (Tr. 254–58.) After a second hearing before an ALJ, Plaintiff again received an unfavorable decision on May 5, 2012. (Tr. 152–96, 262–77.) The Appeals Council again remanded the claim for further proceedings. (Tr. 283–86.) Plaintiff had a third hearing on August 12, 2015. (Tr. 79–151.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 15–37.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council

denied. (Tr. 1–4.) Plaintiff then timely filed a Complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B.    Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1965, claimed disability beginning on December 1, 2006. (Tr. 461.) Plaintiff has a limited education. (Tr. 518.) Plaintiff has no past relevant work experience. (Tr. 35.) Plaintiff alleged disability due to back, neck, and left knee injuries. (Tr. 514.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since May 7, 2008, the application date. (Tr. 20.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: disorders of the spine, left patellofemoral syndrome, chronic obstructive pulmonary disease with commingling tobacco dependence, a cognitive disorder/learning disorder, an affective disorder variously diagnosed as schizoaffective versus depressive versus mood disorders, generalized anxiety disorder, a personality disorder variously diagnosed as antisocial personality versus intermittent explosive personality disorders, and substance abuse disorder. (*Id*.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 24.) The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") as follows:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except he can frequently climb ramps and stairs and never climb ladders, ropes, or scaffolds. The claimant can occasionally stoop, can frequently crouch and crawl, and can occasionally reach overhead. He can have frequent exposure to extreme cold, heat, and humidity, as well as frequent exposure to fumes, odors, dusts, gases, and poor ventilation. The claimant can have frequent exposure to hazards, such as moving, mechanical parts of equipment, tools, and machinery. The claimant can understand, carryout, and remember short, simple instructions toward the goal of completing job tasks consisting of recurrent, uniform steps with only basic changes in the work setting and that does not involve

assembly line pace or production quotas and does not involve more than occasional interaction with the general public, supervisors, and coworkers.

(Tr. 29.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not fully credible. (Tr. 30.)

As noted, the ALJ determined that Plaintiff did not have any past relevant work. (Tr. 35.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a produce sorter, laundry folder, and photo copy/scanner operator. (Tr. 36.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (*Id*.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following:

(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining

whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**ANALYSIS**

Plaintiff challenges the ALJ's decision on the ground that the ALJ erred in assessing the opinions of Dr. A. Elise Conroy. (Dkt. 17.) Specifically, Plaintiff contends that the ALJ failed to properly analyze Dr. Conroy's opinions regarding Plaintiff's mental limitations and, therefore, the ALJ's decision is not supported by substantial evidence. For the reasons that follow, Plaintiff's contention does not warrant reversal.

On June 1, 2009, Plaintiff underwent a psychological examination by Dr. Conroy. (Tr. 757.) Dr. Conroy conducted a mental examination of Plaintiff and determined Plaintiff's scores on the Wechsler Adult Intelligence Scale-IV ("WAIS-IV"). (Tr. 761.) Plaintiff obtained a verbal comprehension score of sixty-eight, perceptual reasoning score of sixty-seven, working memory score of sixty-three, processing speed score of sixty-five, and a full scale IQ score of sixty. (*Id*.) Dr. Conroy concluded that Plaintiff tested in the mildly mentally retarded range and suffers from schizoaffective disorder. (Tr. 767–68.) Dr. Conroy also opined that Plaintiff has problems with self-direction resulting from his intellectual limitations and interpersonal skill deficits resulting from his poor reasoning and low self-esteem. (*Id*.) Dr. Conroy further stated that Plaintiff needs help with communication and work skills and that his overreaction to stress may cause problems in the workplace. (*Id*.) To address these issues, Dr. Conroy recommended medication and therapy. (*Id*.) Dr. Conroy further concluded that Plaintiff's cognitive limitations and limited work skills will make finding employment challenging, and therefore recommended an employment counselor

and job coach to help him find work. (*Id*.) Last, Dr. Conroy stated that Plaintiff may need supported employment because of his emotional and intellectual limitations. (Tr. 769.)

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). This standard applies equally to the opinions of treating and non-treating physicians. *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015). In determining the weight to afford a medical opinion, the ALJ considers the examining and treatment relationship between the claimant and doctor, the length of the treatment and the frequency of the examination, the nature and extent of the treatment relationship, the supportability and consistency of the evidence, the specialization of the doctor, and other factors that tend to support or contradict the opinion. *Hearn v. Comm'r of Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015). The ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

In her decision, the ALJ considered the opinion of Dr. Conroy and assigned it little weight. (Tr. 24–25, 27–29, 34.) The ALJ noted Dr. Conroy's assessment that Plaintiff is incapable of independent action with poor self-direction, poor reasoning, and difficulty with problem solving. (Tr. 25.) The ALJ also noted that Plaintiff received a full scale IQ score of sixty from Dr. Conroy. (Tr. 26.) However, the ALJ afforded the IQ score little weight, reasoning that it is not commensurate with Plaintiff's education. (Tr. 27.) The ALJ specifically addressed Plaintiff's testimony that he had a low intellect and performed poorly in school, Dr. Conroy's testing that showed Plaintiff's academic achievement ranging from the first to fourth grade levels, and school records indicating special education. (*Id.*) However, the ALJ reasoned that the school records also indicate that Plaintiff attended classes regularly and had IQ scores higher than sixty. (*Id.*)

Further, when he initially filed for disability, Plaintiff admitted that he had an eleventh grade education and indicated that he did not attend special education classes. (Tr. 27, 518.) The ALJ also noted that Plaintiff indicated he had a ninth grade education in 2010 and 2012 and a tenth grade education in 2005. (Tr. 26.) The ALJ concluded that the "weight of the evidence suggests the claimant has between a ninth to tenth grade education in a non-specialized setting" and that Plaintiff's history "tends to rebut a diagnosis of mild mental retardation and IQ scores in the 60s." (*Id.*)

Additionally, the ALJ noted that Plaintiff received an IQ score of eighty-one in 2010 when he underwent psychological screening with the Florida Department of Corrections. (Tr. 28, 1203.) The ALJ conceded that the WAIS-IV test is preferred by the Social Security Administration, but reasoned that Plaintiff's WAIS-IV test was conducted as part of a vocational rehabilitation examination, whereas the Department of Corrections' test occurred while Plaintiff was imprisoned and Plaintiff therefore had less of a motive to present himself as more limited. (Tr. 28.) The ALJ further cited to the case *Seabrooks v. Colvin* from the United States District Court, Northern District of Florida, in which the court held that the test used by the Department of Corrections "yielded a reliable and valid IQ score under the circumstances." 5:13CV89/EMT, 2014 WL 5483169, at *12 (N.D. Fla. Oct. 29, 2014).

The ALJ also reasoned that Dr. Conroy relied too heavily on the subjective complaints of Plaintiff, noting that Plaintiff "is not a particularly credible source." (Tr. 34.) The ALJ pointed to Plaintiff's criminal background, specifically noting that Plaintiff's record of "writing bad checks" represents a crime of dishonesty. (*Id.*) The ALJ considered that Dr. Conroy's report "came through a vocational rehabilitation evaluation, where there was an inherent motive for the claimant to present himself as more limited than he actually was." (*Id.*)

Plaintiff argues that the ALJ erred by failing to acknowledge that as an examining source, Dr. Conroy's opinion was entitled to more weight and that Dr. Conroy's specialty is in clinical psychology. (Dkt. 17 at 13.) However, the Court finds that the ALJ properly evaluated Dr. Conroy's opinion. First, because Dr. Conroy examined Plaintiff on only one occasion, her opinion is not entitled to the deference that is accorded to opinions of treating physicians. *See Eyre v. Comm'r of Soc. Sec.*, 586 F. App'x 521, 523 (11th Cir. 2014); 20 C.F.R. § 404.1527(c)(3); *see also Heppell-Libsansky v. Comm'r of Soc. Sec.*, 170 F. App'x 693, 698 (11th Cir. 2006) (ruling that the ALJ did not err by failing to accord a physician's opinion controlling weight where physician treated claimant only twice after the alleged onset date, as the physician did not have a longstanding relationship with claimant); *Beegle v. Comm'r of Soc. Sec.*, 482 F. App'x 483, 489 (11th Cir. 2012) (finding that the ALJ was not required to defer to a physician's opinion because the physician only examined the claimant on a single occasion and did not treat him); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (finding that physicians' opinions were "not entitled to deference because as one-time examiners they were not treating physicians"). Second, the ALJ discredited Dr. Conroy's opinion because the record did not support her diagnosis of mild mental retardation and an IQ score of sixty. (Tr. 30.) Although she was not required to do so, the ALJ adequately articulated good cause to discredit Dr. Conroy's opinion, namely that the evidence did not support her opinion. *See Winschel*, 631 F.3d at 1179; *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) (rejecting application of the "good cause" standard because the opinion at issue was made by a physician who "saw [claimant] only one time").

Plaintiff challenges the ALJ's finding that Dr. Conroy's opinion was based on Plaintiff's subjective complaints by arguing that consideration of subjective complaints are always a part of a physician's analysis. (Dkt. 17 at 20.) However, a review of the evidence demonstrates that the

ALJ's decision to afford Dr. Conroy's opinion little weight is supported by substantial evidence. Specifically, as the ALJ reasoned (Tr. 27), Plaintiff has at least a ninth grade education and reported an eleventh grade education when he applied for supplemental income. (Tr. 518, 1203.) Further, the ALJ noted that Plaintiff demonstrated an understanding of his Fifth Amendment right against self-incrimination when he refused to answer questions at the hearing regarding how he made money in prison. (Tr. 27, 120.) The ALJ further reasoned that Plaintiff was able to obtain a driver's license and only lost his license because of he received a citation for driving under the influence. (Tr. 27, 116–17, 727.) Plaintiff admitted that he was able to navigate the local bus transportation system and that he can read short, simple messages. (Tr. 27, 99, 101, 758.) He was also able to complete several handwritten requests for medical treatment while in jail. (Tr. 28–29, 965–67.) Notably, correctional facility staff reported that Plaintiff's mental health symptoms did not evidence a significant impairment in his ability to adapt to the correctional environment. (Tr. 25, 886.) Thus, the ALJ considered Dr. Conroy's opinion, stated that she afforded the opinion little weight, and provided ample reasoning for doing so. (Tr. 25–28, 34.) Accordingly, Plaintiff's contention concerning Dr. Conroy's opinion does not warrant reversal.

Plaintiff similarly contends that the ALJ's RFC assessment is contrary to law because it does not accurately describe all of the practical effects of Plaintiff's impairments and that the VE's testimony premised on the inaccurate RFC does not constitute substantial evidence to support the ALJ's decision. (Dkt. 17 at 10.) Plaintiff argues that "limitations were excluded from the RFC finding based on an improper analysis by the ALJ" and that "the limitations excluded from the RFC were opined by an examining medical source." (Dkt. 17 at 7–8.) Plaintiff does not specify a particular medical source within these arguments; however, Plaintiff's brief is entirely focused on Dr. Conroy. Thus, Plaintiff's contention appears to rely solely on his argument that the ALJ

erred in assessing Dr. Conroy's opinions. As explained above, the ALJ's decision to afford Dr. Conroy's opinions little weight is supported by substantial evidence.

Plaintiff also argues that the ALJ's credibility assessment of Plaintiff is prejudicial and warrants remand under Social Security Ruling ("SSR") 16-3p. (Dkt. 17 at 17.) However, as the Commissioner argues (Dkt. 18 at 9) and Plaintiff concedes (Dkt. 17 at 6), SSR 16-3p was not in effect at the time of the ALJ's decision. SSR 16-3p (S.S.A. Oct. 25, 2017). Moreover, the Eleventh Circuit has ruled that SSR 16-3p does not apply retroactively. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018) (finding SSR 16-3p applies only prospectively).

Last, Plaintiff argues that the ALJ failed to discuss any of the medical evidence that supported or was consistent with Dr. Conroy's opinion. (Dkt. 17 at 13.) However, there is no requirement that the ALJ specifically refer to every piece of evidence from Plaintiff's medical records in her decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Rather, the district court must review the ALJ's decision and determine whether the ALJ considered the plaintiff's medical condition as a whole and also determine whether the ALJ's conclusion, as a whole, was supported by substantial evidence in the record. *Id.* (quoting *Foote v. Charter*, 67 F.3d 1553, 1561 (11th Cir. 1995)). Substantial evidence is something "more than a mere scintilla, but less than a preponderance." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). Further, while Plaintiff points to various records that allegedly support Dr. Conroy's opinion (Dkt. 17 at 14–16), it is not the role of this Court to reweigh the evidence. Plaintiff's contentions misinterpret the narrowly circumscribed nature of the Court's appellate review, which precludes us from "re-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner] . . . even if the evidence preponderates against" the decision. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (quoting *Bloodsworth,* 703 F.2d at 1239). This Court may not reweigh the evidence

and decide facts anew and must defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it. *See Dyer*, 395 F.3d at 1210. Accordingly, Plaintiff's last contention does not warrant reversal.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on June 14, 2018.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record